## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>SANDOVAL COUNTY, NEW MEXICO; SANDOVAL COUNTY BOARD OF COMMISSIONERS; DON LEONARD, ORLANDO LUCERO, DONALD CHAPMAN, GLEN WALTERS, and DARRYL MADALENA, Members of the Sandoval County Board of Commissioners; and SALLY PADILLA, Sandoval County Clerk,<br><br>   Defendants. | No. 88-CV-1457-BRB-DJS |

## ORDER GRANTING JOINT MOTION
## FOR ENTRY OF LIMITED CONSENT DECREE

Before **BALDOCK**, Circuit Judge, **BLACK**, Chief District Judge, and **PARKER**, Senior District Judge.[*]

**PER CURIAM**.

   In enacting § 203 of the Voting Rights Act (VRA), 42 U.S.C. § 1973aa–1a, Congress intended that "language minority populations have substantive access to the ballot." H.R. Rep. No. 655, 102d Cong., 2d Sess. at 5 (1992), reprinted in 1992 U.S.C.C.A.N. 766, 769.

---

   [*] This three judge panel is convened in accordance with 28 U.S.C. § 2284 and 42 U.S.C. § 1973aa-2.

In the case of historically unwritten Native American languages, a jurisdiction covered under § 203 "must furnish oral instruction, assistance, or other information relating to registration and voting." 42 U.S.C. § 1973aa-1a(c). As relevant here, the United States initiated this action against Sandoval County, New Mexico, its Board of County Commissioners, and its County Clerk (collectively "Sandoval County") in December 1988, alleging a violation of § 203 of the VRA. The action arose from the lack of election practices and procedures in Sandoval County designed to enfranchise Native Americans who speak historically unwritten languages.[1] Presently before the Court is the parties "Joint Motion for and Memorandum in Support of Order Entering Limited Consent Decree." Doc. #231. Therein, the United States and Sandoval County agree that after two decades the latter has not yet come into sufficient compliance with the VRA. So they once again ask us to extend federal court oversight of this matter in the modified form of a consent decree we originally entered on September 9, 1994. We previously extended that decree, as amended, through additional election cycles on November 5, 2004, November 28, 2007, and March 3, 2009. This time the parties ask us to extend the decree, which most recently expired on April 15, 2011, through another federal election cycle, or until March 15, 2013. Specifically, the parties ask us to authorize the appointment of (1) the county attorney (in the county clerk's stead) to supervise the county's Native American Voting Rights Program (NAVRP) and (2) federal

---

[1] The Native American languages spoken in Sandoval County and covered under § 203 of the VRA include Navajo, Keresan, and Towa. See 28 C.F.R. Part 55 (appendix). The Pueblos subject to the consent decree are Jemez, San Felipe, Santo Domingo, and Zia. Three Chapters of the Navajo Nation are also subject to the decree. See Doc. #177.

2

election observers to monitor elections at Native American polling places in the county. Doc. #231 at 7, ¶ 18.  For reasons we explain, we grant the extension.  The parties are forewarned, however, that the time for Sandoval County to come into compliance with the VRA is *now*.  We will grant no further extension of the consent decree in this case absent an extended evidentiary hearing, at which all named Defendants *will* appear, to determine the precise extent to which Sandoval County has complied with its legal obligations under the VRA.  In the absence of substantial compliance, we *will* further order Sandoval County, or more precisely its duly elected officials, to show cause why they should not be held in contempt of court for failure to abide by our decree and comply with the VRA.  See United States v. McKinley Cnty., 941 F. Supp. 1062, 1065 (D.N.M. 1996) (three-judge panel) (per curiam) ("Entry of a consent decree is a discretionary exercise of judicial power punishable by contempt.").

I.

On March 23, 1990, the parties entered into a settlement agreement that required Sandoval County to develop and implement a comprehensive bilingual NAVRP designed to achieve compliance with the VRA.[2]  Doc. #123.  The parties filed a detailed description of the NAVRP with the Court on April 30, 1990.  Doc #124.  On May 17, 1990, we ordered Sandoval County to implement the NAVRP and entered the parties' settlement agreement as the judgment of the Court. Doc. # 125. Regrettably, Sandoval County failed to implement

---

[2] Until recently, the parties referred to Sandoval County's NAVRP as the Native American Election Information Program or NAEIP.

the NAVRP. In June 1993, the United States moved to reopen the case and obtain discovery. Doc. #127. We granted the motion. Doc. #139. Discovery uncovered significant evidence of Sandoval County's material breach of the settlement agreement. Accordingly, Sandoval County agreed to negotiate a consent decree. The parties filed a proposed consent decree and revised NAVRP on August 30, 1994. Doc. #156. In addition to the Navajo and Keresan languages covered under the prior NAVRP, the decree added the Towa language to the revised NAVRP. The decree also transferred control of the NAVRP from the county clerk, who, by all accounts, was and still is indifferent to the NAVRP, to the county attorney. (We will have more to say on this later). On September 9, 1994, we approved the consent decree, which effectively rendered the NAVRP a mandatory injunction against Sandoval County subject to our continuing jurisdiction. By its terms, the decree was set to expire ten years post, or on September 9, 2004. Doc. #157.

Over the course of the consent decree's first decade, the United States assigned federal observers to observe Sandoval County elections and monitor Sandoval County's efforts (or lack thereof) to implement the revised NAVRP and comply with § 203 of the VRA. Based upon information gathered, the United States determined that Sandoval County's progress in implementing the NAVRP was painfully slow. After ten years, Sandoval County, in ongoing violation of both the VRA and the decree, had failed to furnish to covered voters all oral instructions, assistance, and other information related to voting in the Navajo, Keresan, and Towa languages. The parties agreed that circumstances justified extending the consent decree and moved jointly to extend the decree, as amended, through

January 15, 2007. Doc. #162. The Court granted the parties' motion and approved the amended consent decree on November 5, 2004. Doc. #165.

The United States subsequently monitored the November 2004 general election and the June 2006 primary and November 2006 general elections in Sandoval County. Federal election observer reports indicated that Native Americans' access to the ballot in Sandoval County remained impeded. The parties agreed that Sandoval County's ongoing failure to fully implement the NAVRP and substantially comply with the VRA justified yet another extension of the consent decree. The parties jointly moved a second time to extend the consent decree, as amended, this time through January 15, 2009. Doc. #175. With our patience waning, we ordered the parties to provide us with the federal observer reports and county voting rights coordinator (VRC) reports from the most recent elections.[3] We further ordered the parties to provide us with any out-of-court letter agreements (*i.e.* free from court supervision) between the United States and other New Mexico counties designed to achieve compliance with the VRA. Lastly, we directed the parties to submit a joint report setting forth any agreements between them and identifying any issues we needed to resolve. Doc. #185. On September 10, 2007, the parties filed a joint report in which they agreed that circumstances justified extending and modifying the consent decree a second time. Doc. #205. Much to our consternation, the report noted that neither Sandoval County's Navajo,

---

[3] Under the terms of the NAVRP, Sandoval County must hire voting rights coordinators (VRCs) at its own expense to disseminate election information in the covered languages. The county, through its VRCs, must carry out a comprehensive program, again at county expense, designed to provide election information to Native Americans regarding every phase of the electoral process. See Doc. #232 at 3.

Keresan, nor Towa language programs, all part of the NAVRP, had resulted in substantial compliance with our amended consent decree and the VRA.

On September 28, 2007, the parties filed an amended joint stipulation and second revised NAVRP.  Doc. #210.  This time the NAVRP streamlined and simplified Sandoval County's responsibilities with the aim of encouraging the county to come into compliance with the VRA.  On November 28, 2007, we extended the decree through January 31, 2009.  Doc. #211.  The United States thereafter monitored the June 2008 primary election and the November 2008 general election.  Apparently, Sandoval County "improved its efforts to comply with the consent decree and section 203 . . . just prior to the November 2008 election."  Doc. #231 at 5, ¶ 13.  The county reportedly improved its pre-election translation training for both Navajo and Towa poll workers, although some ineffective translations occurred at Navajo and Towa polling places on election day.  Keresan speakers were less fortunate.  The first ever pre-election translation training for Keres poll workers lead to a significant number of ineffective translations at Keres polling places on election day.  Based upon the foregoing scenario and Sandoval County's representation that it would continue in earnest its efforts to comply with the VRA, the United States agreed to memorialize the NAVRP's substantive provisions in an out-of-court letter agreement.  The parties also agreed to seek an extension of the consent decree only as to federal observer coverage and county attorney supervision.  On March 3, 2009, we extended the consent decree a third time, as modified, to March 1, 2011.  Doc. #223.  The United States subsequently monitored the June 2010 primary election and the November 2010 general election in Sandoval County.

That brings us to the parties' fourth and present request to extend the consent decree. Federal monitoring of the most recent elections revealed that as to the Navajo and Towa language portions of the NAVRP, Sandoval County maintained the improvements shown in the November 2008 election. At a May 5, 2011 hearing on the motion, the United States represented that Sandoval County was at long last in "substantial compliance" with the VRA in respect to those two languages. Hearing Transcript (H. Tr.) at 3.[4] At that time, we heard from both the Navajo and Towa language VRCs for Sandoval County and were impressed with their sincerity. Both VRCs expressed an ongoing commitment to the NAVRP and a continued willingness to train poll workers pre-election and assist Navajo and Towa speaking voters on election day. When asked whether he had any reason to believe that Sandoval County would not continue to successfully implement the Navajo and Towa language portions of the NAVRP, counsel for the United States responded: "At this moment . . . I don't have any specific concerns." H. Tr. at 4.

Unfortunately, the most recent report regarding the Keresan language portion of the NAVRP is not nearly so favorable. Rather, the report is so unfavorable as to render the present state of affairs regarding this aspect of Sandoval County's NAVRP unacceptable. Despite the fact that the NAVRP has continuously covered Keresan since the parties' initial settlement in 1990, the parties agree that "substantial deficiencies" remain in the Keresan language program:

---

[4] All citations to the May 5, 2011 Hearing Transcript are from a non-public working copy the court reporter provided us at our request. To date, neither party to our knowledge has requested a formal transcript of the hearing.

7

> The Keres VRC provided language assistance training prior to the November election for poll workers at one of the three polling places serving Keres-speaking voters. The Keres VRC, however, provided no language assistance training prior to the June election, nor did he provide language assistance training for two of the three polling places serving Keres-speaking voters prior to the November election. The Keres language assistance on Election Day during the June election was not effective and nearly nonexistent. Significantly, the County did not hire a full-time or part-time Keres-speaking VRC prior to the June election, but hired a Keres-speaking VRC on a limited basis and only to provide a radio announcement. No other dissemination of election information of Keresan was provided to limited-English proficient Keres speakers prior to the June primary election. Moreover, Keres language assistance during the June election was not effective and nearly nonexistent. During the November election, however, much more language assistance was provided at the Keres-speaking polling places, although at times it was not complete.

Doc. #231 at 6-7, ¶14.

## II.

In determining whether Sandoval County has complied with § 203 of the VRA, the Attorney General asks whether the county has taken "all reasonable steps" to ensure that Native American language voters have received information and assistance allowing them to "participate *effectively* in voting-connected activities." 28 C.F.R. § 55.2(b)(1) & (2) (emphasis added). This standard does not demand perfection but only, as the United States describes it, "substantial compliance" with § 203: "The standard that the United States observes in this matter . . . is substantial compliance. We do not expect perfection. We do not expect absolute, full compliance." H. Tr. at 7 (statement of counsel for the United States). This standard accounts for the fact that the occasional irregularity or inconsistency in oral translation may occur. If every such instance constituted a violation of § 203, federal oversight of Sandoval County's electoral process might extend in perpetuity, thereby

8

upsetting the appropriate balance between national, state, and local authority.[5] See Evans v. City of Chicago, 10 F.3d 474, 477–78 (7th Cir. 1993) (en banc) (expressing concern over a consent decree that "entangles an arm of the federal government in the administration of another sovereign . . . rather than enforcing strictly legal rights").

### A.

Applying the appropriate standard, the need for continuing federal oversight of the Keresan language portion of Sandoval County's NAVRP is beyond apparent. Sandoval County has had over two decades to implement the Keresan language portion of the NAVRP. Yet the county "concedes" that "with regards to its Keres language program," it has substantially complied with neither § 203 of the VRA nor the out-of-court letter agreement. Doc. #232 at 7. Only recently has the county began to take "steps" towards securing the voting rights of its Keres population. While we will grant the parties' pending joint motion and approve their proposed "Amended Joint Stipulation and Consent Decree" as it relates to the Keresan language portion of Sandoval County's NAVRP, we (and most certainly Keres voters) are done waiting for the county to comply with § 203. This time we will not simply extend the proposed consent decree based upon Sandoval County's probable violation of the

---

[5] We are ever mindful that the "strong arm" of the United States Justice Department may persuade local government officials with budgetary constraints "to sacrifice the appropriate balance between local[, state,] and national power, and thus the public interest, merely to avoid the expense of litigation." McKinley Cnty., 941 F. Supp. at 1068. This is why "'any federal decree must be a tailored remedial response to illegality.'" Id. at 1066 (quoting League of Latin American Citizens v. Clements, 999 F.2d 831, 847 (5th Cir. 1993)). "Parties to a lawsuit 'cannot, by giving each other consideration, purchase from the court . . . a continuing injunction' in the form of a consent decree." Id. (quoting Sys. Fed'n No. 91 v. Wright, 364 U.S. 642, 651 (1961)).

VRA and hope the county complies with § 203. "Once entered, a consent decree may be enforced." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 440 (2004). And given our authority under the decree "to enter further relief or such other orders as may be necessary . . . to ensure compliance with [the VRA]," we intend do just that, if necessary, against Sandoval County officials by way of contempt proceedings.[6] Doc. #232 at 8.

B.

While Sandoval County is not yet in substantial compliance with § 203 in relation to the Keresan language, the county, we are told, is for the first time since commencement of this action in substantial compliance with § 203 of the VRA as it applies to both the Navajo and Towa languages. This means Sandoval County at this time has taken "all reasonable steps" designed to provide Navajo and Towa speaking voters meaningful access to the ballot.

---

[6] The Supreme Court's discussion in Hutto v. Finney, 437 U.S. 678 (1978), is instructive on the extent of our authority to speed Sandoval County's long awaited compliance with § 203, and requisite implementation of the NAVRP *in all its aspects*. After four years of operating under a mandatory injunction subject to court supervision, prison officials in Hutto still had not remedied the prison's unconstitutional conditions of confinement. In upholding an award of attorney fees against the recalcitrant officials, the Court equated such award with a remedial fine imposed for contempt:

> In exercising their prospective powers . . . federal courts are not reduced to issuing injunctions against [public officials] and hoping for compliance. Once issued, an injunction may be enforced. Many of the court's most effective enforcement weapons involve financial penalties. A criminal contempt prosecution for resistance to the court's lawful order may result in a jail term or fine. Civil contempt proceedings may yield a conditional jail term or fine. Civil contempt proceedings may also be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance.

Hutto, 437 U.S. at 690–91 (internal brackets, ellipses, and quotations omitted).

10

28 C.F.R. § 55.2(b)(2). And that raises the question of whether extension of the consent decree, even in the limited form of authorizing the appointment of the county attorney to supervise the NAVRP and federal observers to monitor county elections, is reasonable and necessary as to those languages. This is so because "[p]ublic officials presumably perform their duties in a manner consistent with law absent 'clear evidence to the contrary.'" McKinley Cnty., 941 F. Supp. at 1066 (quoting United States v. Chemical Found., Inc., 272 U.S. 1, 14–15 (1926)). Accordingly,

> The federal court must exercise its equitable powers to ensure that when the objects of the decree have been attained, responsibility for discharging the [locality's] obligations is returned promptly to the [locality] and its officials. As public servants, the officials of the [locality] must be presumed to have a high decree of competence in deciding how best to discharge their governmental responsibilities.

Frew, 540 U.S. at 442.

1.

Notwithstanding these general principles, we have justifiable concerns, reflected in the record, about returning any portion of Sandoval County's NAVRP to the auspices of the county clerk *at this time*. At the May 5 hearing, counsel for the United States referred to "the long history of problems that have been generated by the clerk's office in Sandoval County" with respect to the NAVRP. H. Tr. at 13. When we observed that "by statute and by law, the county clerk's in charge of . . . elections," the county attorney referred to a "level of hostility" and stated she had "personally heard" the county clerk make derogatory comments about the NAVRP. H. Tr. at 22. The Towa VRC expressed a similar sentiment: "[I]t is very important that we stay under the attorney's office because it works, and with the county

clerk, there was always problems. That's why we ended up in court." H. Tr. at 27. So as not to risk losing what has recently been won, we have little choice but to grant the parties' request to authorize the county attorney's continued supervision of the NAVRP in its entirety through March 15, 2013.[7]

We caution all parties and their respective counsel – including the county clerk who is a named party to this action – however, that New Mexico state law places within the purview of the county clerk (and her successors) the responsibility of providing ballot access to Native American voters of limited English proficiency.[8] For instance, New Mexico law states "[t]he county clerk shall initiate nonpartisan measures to urge and facilitate registration of language minority voters." N.M. Stat. Ann. § 1-4-9. State law further provides that on election day "[i]n those polling places designated . . . as being subject to the provisions of the [VRA], oral assistance shall be made available to assist minority language voters who cannot read sufficiently well to exercise the elective franchise." N.M. Stat. Ann. § 1-2-19.A. The same law assigns to the county clerk the task of appointing election translators, with "the advice of the pueblo or tribal officials residing in that county,"

---

[7] We note that the "Interim Attorney for Sandoval County" appeared on behalf of the county at our May 5 hearing. H. Tr. at 1–2. She appeared well-informed and able. We understand, however, that the county has committed to retaining another attorney on a full-time basis. We trust that whomever that attorney might be, the county will make him or her fully cognizant of this order and the status of affairs in relation to Native American voting rights in Sandoval County.

[8] To be sure, New Mexico law does not place responsibility for ensuring minority language voters ballot access within the *sole* purview of the county clerk, and we do not intend to suggest otherwise. See, e.g., N.M. Stat. Ann. §1-2-3.C (directing the secretary of state in the case of historically unwritten languages to furnish "orally in the respective minority language" information relating to the election process).

to provide minority language assistance at the polls. Id. § 1-2-19.B. State law also assigns to the county clerk enumerated responsibilities with regard to early voting. For example, when an Indian nation or pueblo so requests, state law mandates that the county clerk provide an early voting location on Indian land and staff that location with election translators. Id. § 1-6-5.8. Any abdication of these and other assigned roles on the part of the county clerk likely constitutes a violation of the oath taken by all public officials to uphold the law.

Some might view our authorization of the appointment of the county attorney to supervise Sandoval County's NAVRP as in tension with New Mexico state law. We have authorized such oversight without objection, however, since 1994 with the aim of bringing the county into compliance with federal law and securing minority voting rights. But the county attorney's supervision of the NAVRP will *not* continue ad infinitum *if* it depends upon our authorization. And if that means the county clerk must once again assume supervision of the NAVRP (a proposition about which we express no opinion), then all interested parties, including the county clerk, need prepare themselves now, lest they appear before us at hearing to render a full accounting of their (mis)conduct.

2.

That leaves only the parties' request that we authorize the appointment of federal election observers to monitor elections at Navajo and Towa polling places within Sandoval County, despite the United States' representation that the county is in substantial compliance with § 203 as it applies to those languages. Notably, § 3 of the VRA authorizes us to provide for the appointment of such observers, notwithstanding compliance with § 203, as

"appropriate" to enforce the VRA and underlying constitutional guarantees found in the Fifteenth Amendment:

> *Provided*, That the court need not authorize the appointment of observers if any incidents or denial or abridgement of the right to vote . . . (1) have been few in number and have been promptly and effectively corrected by . . . local action, (2) the continuing effect of such incidents have been eliminated, and (3) there is no reasonable probability of their recurrence in the future.

42 U.S.C. § 1973a(a). Under § 8, observers have broad authority to monitor all aspects of the voting process on election day. Id. § 1973f(d).

Given the long and arduous history of this case and the fact that Sandoval County only recently appears to have taken its obligations under the VRA seriously, we do not deem the parties' request to place federal observers at Navajo and Towa polling places within the county through one more election cycle, at no apparent expense to the county, wholly unreasonable. Applying the terms of § 1973a(a) and considering the county's failure to suggest otherwise, we cannot say with any degree of certainty that the county's substantial compliance with § 203 over the course of one election cycle during the past two decades constitutes a prompt and necessarily effective correction of prior transgressions. Nor can we say with any degree of confidence that the continuing effect of such illegality has been entirely eliminated or that no reasonable probability exists that problems may recur.

### III.

Consistent with the foregoing, we will retain jurisdiction of this matter through March 15, 2013 to enter further relief or such other orders as may be necessary . . . to ensure compliance with § 203 of the VRA. In aid thereof, we authorize, *through one more election*

14

*cycle only,* the appointment of (1) the county attorney to supervise the county's NAVRP, and (2) federal election observers to monitor elections at Navajo, Keres, and Towa polling places within the county.  Upon the expiration of the decree, Sandoval County, absent good cause shown, *must* have fully implemented the NAVRP and *must* be in "substantial compliance" with § 203 of the VRA, or *will* be asked to show cause why it should not be held in contempt of this Court's lawful decree.  Accordingly, the parties' joint motion for an order entering limited consent decree, Doc. #231, is

GRANTED.

Entered for the Court,
this 6th day of July, 2011

Bobby R. Baldock
United States Circuit Judge

Bruce D. Black
United States Chief District Judge

James A. Parker
Senior United States District Judge